IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

CHARLES MORANT,

                                    07 Civ 4790 (JSR)(THK)

     PLAINTIFF                   COMPLAINT [JURY TRIAL]

     vs

THE NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION,
BELLEVUE HOSPITAL CENTRE,
JAMES DONNELLY, Director of the
Department of Chemistry @
New York City Health and the
Hospitals Corporation Bellevue
Hospital Centre, DOCTOR ROBERT
BOORSTEIN, Director of Pathology
@ the New York City Health and
Hospitals Corporation Bellevue
Hospital Centre, each in their
individual and official capacities,

     DEFENDANTS
_____

I.  INTRODUCTION

    1.  This is an action which arises out of the
Plaintiff's employment.

    2.  The Plaintiff alleges that, when he suffered a re-
assignment and demotion on or about May 12, 2006, effective
June 9, 2006, he was discriminated against in the terms and
conditions of his employment because of his race and age.

    3.  In addition thereto and because of his refusal to
suffer the indignities of the racially and age
discriminatory re-assignment and demotion and all of the
treatment associated therewith and the failure of the
Defendants to hold the implementation of the re-assignment
and demotion pending grievances and to otherwise not
provide the Plaintiff alternatives to address the issues
raised by such re-assignment and demotion, he was, because
of his race and his age, constructively discharged from his
employment on or about June 9, 2006.

4.   That is, the Plaintiff was compelled by the racially and age discriminatory conduct of the Defendants and against his will to involuntarily separate from his position.

5.   The Plaintiff asserts that he was constructively discharged from his position on June 9, 2006. He claims he was constructively discharged because of his age and race in violation of his rights guaranteed under the laws and Constitution of the United States, the City of New York, and the State of New York.

6.   In addition, he claims that he was involuntarily discharged in retaliation for his efforts to secure relief from the racially and age discriminatory treatment, which he was suffering in the terms and conditions of his employment and which itself violated his rights, in violation of his rights under the laws and Constitution of the United States and, as well, of the City and State of New York.

7.   The Plaintiff seeks relief from this Court pursuant to and under the laws and Constitution of the United States and the laws and Constitution of the State and City of New York.

8.   The Plaintiff seeks compensatory and punitive monetary damages and other appropriate relief including his restoration to his former position with all retroactive benefits associated therewith for the violation of his federally guaranteed and State and City guaranteed constitutional and civil and human rights.

## II. JURISDICTION

9.   Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343 [3] and [4] in conjunction with the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

10.   Jurisdiction is also invoked pursuant to and under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. Section 2000 et seq. and the Age Discrimination in Employment Act of 1967 as amended, 29 U.S.C. Section 621, et seq.

11.   The Plaintiff has secured a Right to Sue Letter from the Equal Employment Opportunity Commission to which, as a prerequisite, he went to secure relief for the wrongful conduct described and complained of herein.

12.   On or about May 9, 2007, issued the "right to Sue Letter, a letter which was received by the Plaintiff on or about May 22, 2007.

13.   This litigation is commenced within ninety days of the date of the issuance and receipt of the afore-mentioned Right to Sue Letter.

14.   Jurisdiction of this Court is also invoked pursuant to and under 28 U.S.C. Section 1367 otherwise known as Supplemental Pendent Party and Pendent Claim jurisdiction.

15.   This litigation arises out of occurrences and transactions which not only give rise to the violation of the Plaintiff's rights under federal jurisdiction but, as well, under State law jurisdiction.

16.   The State law claims have a common nucleus of operative fact with those which form the basis for the federal law claims. Those claims include but are not limited to claims under the Human Rights Law of the City of New York and the Human Rights Law of the State of New York, both of which Laws prohibit discrimination based on race and/or age and both of which Laws prohibit retaliation based on efforts to secure relief from race and/or discrimination in the terms and conditions of an individual's employment; and those State Constitutional provisions which bar discrimination based on race and mandate the equivalent to the federal Constitution's mandated requirement equal protection under the law.

17.   Jurisdiction is also invoked in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which the Plaintiff seeks not only monetary damages but, as well, other appropriate relief including injunctive relief.

18.   This is an action for the violation of the Plaintiff's civil and constitutional rights as guaranteed

under the laws and Constitution of the United States and the laws and Constitution of the State of New York.

### III. PARTIES

19.  The Plaintiff, Charles Morant, is an African American citizen and a resident of the State of New York, the City of New York, and the County of Queens.

20.  The New York City Health and Hospitals Corporation is an independently standing municipal entity created under the laws and Constitution of the State of New York. The New York City Health and Hospitals Corporation maintains and operates a municipal hospital system designed to provide health care services to those qualified for the services in the resident population of the City of New York.

21.  Among other of the Hospital facilities operated by the New York City Health and Hospitals Corporation is the Defendant Bellevue Hospital Centre, the facility whereat the Plaintiff was assigned during the course of his career as an employee of the New York City Health and Hospitals Corporation and until the Plaintiff was constructively discharged from his position.

22.  Defendant James Donnelly is a white individual who, at the relevant time hereinafter described, was the Plaintiff's immediate supervisor and the individual who engaged in the racially and age discriminatorily treatment of the Plaintiff in the terms and conditions of the Plaintiff's employment and, associated therewith, compelled the constructive discharge of the Plaintiff from his position with the New York City Health and Hospitals Corporation.

23.  Defendant Robert Boorstein is a white individual who at the relevant time hereinafter described was the Director of Pathology at the New York City Health and Hospitals Corporation Bellevue Hospital Centre. Defendant Connolly reported to Defendant Boorstein and Defendant Boorstein was engaged and involved in the challenged race and age discriminatory conduct described hereinafter.

IV. ALLEGATIONS

24. The Plaintiff is an African American citizen and resident of the City of New York, the County of Queens, and the State of New York.

25. The Plaintiff resides with his family at 112-11 175th Street, Jamaica, Queens, New York 11433.

26. The Plaintiff is married and has been married since 1967 when he met his wife at Benedict College in South Carolina and married her while still attending Benedict College. The Plaintiff and his wife have two children, both of who attended St. John's University and graduated therefrom and both of who are, now successful professionals.

27. The Plaintiff is a graduate of Benedict College in South Carolina. He has a B.S. degree in biochemistry. The Plaintiff has also attended Rockefeller University where he studied clinical toxicology and the advanced applied techniques developed by Doctor Vincent P. Dole in clinical toxicology.

28. The Plaintiff's wife, who has a B.S. degree from Benedict College in Social Science and a Masters degree in early childhood education from Queens College, is the Director of the Allen Christian School in Queens, New York, a school founded by former United States Congressman and Reverend Floyd Harold Flake.

29. The Plaintiff is an active member and officer of the Allen A.M.E. Cathedral of Jamaica, Queens, New York.

30. The Plaintiff was an active member of then Queens Community School District # 28 Board in the City School District of the City of New York where he served for a total of four years.

31. The Plaintiff is sixty [60] years of age.

32. The Plaintiff's birth date is December 7, 1946.

33. The Plaintiff was initially employed by Columbia University as a technologist at Harlem Hospital in October, 1969 when, after graduating from Benedict College, he moved to New York City.

34.   The Harlem Hospital facility is a entity within and as part of the New York City Health and Hospitals Corporation.

35.   Since his initial employment by Columbia University as a laboratory technician at the New York City Health and Hospitals Corporation Harlem Hospital facility, the Plaintiff worked and been promoted to and employed in various supervisory capacities at that facility where he continues to be employed as a senior laboratory supervisor and manager.

36.   After his initial employment by Columbia University as a laboratory technician at the New York City Health and Hospitals Corporation Harlem Hospital facility, the Plaintiff was promoted to supervisor of the Toxicology Department at Harlem Hospital. Thereafter, the Plaintiff was promoted to the position of manager of the core labs at the Harlem Hospital facility including among others the chemistry, toxicology, hematology, coagulation, blood gases, and urinalysis laboratories.

37.   At present the Plaintiff is the Associate Director of the Pathology Department at the New York City Health and Hospitals Corporation Harlem Hospital facility.

38.   While still employed by Columbia University and assigned to the New York City Health and Hospitals Corporation Harlem Hospital facility [as described above], the Plaintiff was hired by the New York City Health and Hospitals Corporation in 1984.

39.   When the Plaintiff was hired by the New York City Health and Hospitals Corporation in 1984, the New York City Health and Hospitals Corporation was aware of the Plaintiff's employment by Columbia University at the New York City Health and Hospitals Corporation Harlem Hospital facility.

40.   The Plaintiff was assigned to the Bellevue Hospital Centre at the commencement of his employment and continued in his assignment at that facility until his constructive and involuntary and unlawful discharge and termination from his employment by the New York City Health and Hospitals Corporation on or about June 9, 2006.

41.  From the commencement of the Plaintiff's employment and until on or about May 12, 2006, approximately twenty two [2] years, the Plaintiff worked in his position at the Bellevue Hospital Centre during the same shift −4:00 P.M. until 12:00 midnight.

42.  For the last eighteen [18] years of his twenty two [22] years of employment at the Bellevue Hospital Centre, the Plaintiff supervised a staff of individuals in the Chemistry Department during that same 4:00 P.M. to midnight shift.

43.  The Plaintiff was initially hired by the New York City Health and Hospitals Corporation and assigned to the Bellevue Hospital Centre because of his background and experience in the field of clinical toxicology including therein extensive training in clinical toxicology at Rockefeller and Columbia Universities.

44.  When Bellevue Hospital Centre lost its State issued license to perform clinical toxicology, the Plaintiff was contracted to undertake efforts to get the State issued license restored so that the clinical toxicological services could be performed at the Bellevue Hospital Centre.

45.  Such was at a time when the drug abuse epidemic in New York City was peaking. Because the New York State Department of Health had withdrawn Bellevue Hospital's license to provide clinical toxicology services, Bellevue Hospital, the flagship hospital within the New York City Health and Hospitals Corporation, lost its ability to provide vital services not only at its own facility but, as well, at other facilities which the Health and Hospitals Corporation maintains and operates.

46.  The Bellevue Hospital Centre Chemistry Department, in which the Plaintiff was initially employed in 1984 and where he continued to be employed until his demotion in May, 2006 and his subsequent constructive and involuntary and retaliatory discharge from his employment by the Health and Hospitals Corporation on June 9, 2006, operates a clinical laboratory which provides support services for the Bellevue Hospital Centre Emergency Room, its Intensive Care Unit, its Wards and its Clinics.

47.   In addition to providing the services as described for Bellevue Hospital Centre, the Bellevue Hospital Chemistry Department's clinical operation provides reference laboratory services for other of the New York City Health and Hospitals Corporation facilities, to wit: Lincoln Hospital, Metropolitan Hospital, Harlem Hospital, Gouverner Hospital, and Goldwater Hospital.

48.   Because of his experience and background, the Plaintiff was requested by Doctor John Pearson, then the Director of Pathology at the New York City Health and Hospitals Corporation Bellevue Hospital Centre facility, to take on the assignment of working with an outside consultant to re-organize the toxicology laboratory at the Bellevue Hospital facility and to apply for the re-licensing of the laboratory.

49. The effort took almost two years to complete at which time Bellevue Hospital successfully re-secured his license to operate its clinical toxicology laboratory.

50.   After he spearheaded the successful efforts to restore the lost State issued license to operate a clinical toxicology program, the Plaintiff was promoted from the position of Assistant Chemist to the position of Associate Chemist, Level II.

51. At or about the time of his promotion to Associate Chemist, Level II, the Plaintiff was assigned by Doctor Pearson, then the Director of Pathology at the Bellevue Hospital Centre, with the responsibility for the supervision of the then newly re-licensed Department of Chemistry toxicology laboratory.

52.   Throughout this period and from the commencement of his employment, the Plaintiff worked the 4:00P.M.-12:00 A.M. shift.

53.   Subsequent to the Plaintiff's promotion to Associate Chemist, Level II and inter-related thereto the supervisory responsibilities which the Plaintiff was given for the toxicology laboratory during the 4:00 P.M. to 12:00 A.M. shift, Doctor Lawrence Kaplan became the Director of the Bellevue Hospital Centre Chemistry Department which, as previously noted, operated the Bellevue Hospital Centre toxicology laboratory.

54.  At that time, Doctor Kaplan increased the Plaintiff's supervisory responsibilities to include not only he previously assigned supervisory responsibilities for the Bellevue Hospital Medical Centre Department of Chemistry toxicology laboratory for the 4:00 P.M. to 12:00 A.M. shift but for the entire Bellevue Medical Centre Department of Chemistry workforce during the 4:00 P.M. to 12:00 A.M. shift.

55.  At or about that time, as well, the Plaintiff was promoted from the position of Associate Chemist, Level II to Associate Chemist Level III.

56.  The Plaintiff supervised the entire Bellevue Hospital Medical Centre Department of Chemistry from approximately 1988 through the time of the Plaintiff's racially discriminatory and age discriminatory demotion and re-assignment and inter-related thereto his racially discriminatory and age discriminatory and retaliatory involuntary constructive discharge in June, 2006.

57.  From the point of his initial employment and for the following almost twenty three years until his demotion, re-assignment, and constructive and retaliatory discharge, the Plaintiff worked, exclusively, during the 4:00 P.M. to 12:00 A.M. shift.

58.  At the time of his racially and age discriminatory demotion, re-assignment, and involuntary and retaliatory constructive discharge during the May-June, 2006 period, the Plaintiff was the most senior technical supervisor in the Bellevue Hospital Medical Centre Department of Chemistry.

59.  Furthermore, the Plaintiff was the only African American shift supervisor on the staff in the Department of Chemistry at the Bellevue Hospital Medical Center.

60.  As the Bellevue Hospital Medical Centre Department of Chemistry shift supervisor for the 4:00 P.M. to 12:00 A.M. shift, the Plaintiff's duties included the scheduling of assignments for a staff of sixteen technicians. Furthermore, the Plaintiff had the responsibility for the overall operation of the shift workload including the overall responsibility for the timely processing of all of the Department of Chemistry procedures, the monitoring of quality control of all instruments and processes, trouble

shooting and problem solving with respect to issues and
matters that arose during the shift, the technical and
managerial training of staff on current and new procedures,
the ordering of supplies and the maintenance of inventory
control of toxicology reagents and supplies, and assuring
compliance with mandated regulatory toxicology policies and
procedures and with the mandated CAP and NYSDOH
inspections.

61. On May 12, 2006, Doctor James Donnelly, the
Plaintiff's immediate supervisor, informed the Plaintiff
that, on June 9, 2006, Mr. Andrew Kapsopoulos, a white
individual believed to be under the age of forty, was going
to take over the Plaintiff's responsibilities as the 4:00
P.M. to the 12:00 A.M. Bellevue Hospital Medical Centre
Department of Chemistry shift and that the Plaintiff was
being transferred from the 4:00 P.M. to 12:00 A.M. shift to
the 8:00 A.M. to 4:00 P.M. shift, with weekend rotations,
for a minimum of one month and that the Plaintiff's
permanent work schedule would be decided at a future date
thereafter.

62. Such change in the terms and conditions of the
plaintiff's employment was a substantial deviation from the
longstanding terms and conditions of the Plaintiff's
longstanding employment and such substantial change and
deviation in the terms and conditions of his employment and
the Plaintiff's replacement in his position by the afore-
stated younger, white person, was the equivalent of the
Plaintiff's demotion.

63. At the meeting, the Plaintiff was informed that,
although he performed his duties and functions as a
supervisor and otherwise well, the re-assignment and inter-
related demotion, effective June 9, 2006, was being done
because the Plaintiff's flex schedule did not cover the
entire 4:00 P.M. to 12:00 A.M. shift from beginning to end.
At that time, the Plaintiff was scheduled for a time shift
from 5:00 P.M. to 11:00 P.M.

64. The Plaintiff was also informed that such action
was being taken because of the Plaintiff's age related
"probable retirement in the near future".

65. The Plaintiff was never asked if he could and
would make accommodations to allow him to cover the shift,
in full, from beginning to end [4:00 P.M. to 12:00 A.M.]

and, thereby, avoid the re-assignment and demotion and
which, if he had been offered the opportunity to correct
whatever issues/problems Defendant Donnelly had, the
Plaintiff could have and would have done so.

66.  The reason he was not offered the opportunity to
address such and that such had never been brought to the
Plaintiff's attention previously was because the flax
schedule hours matter, which was articulated as a basis for
the conduct being taken, was a pretext and a cover for
Defendant Donnelly's otherwise racially and age
discriminatorily motivated purpose, to wit: to get rid of
the Plaintiff.

67.  The real reasons for the Plaintiff's demotion and
termination were the Plaintiff's race and age, the latter
of which was referenced by the remark related to the
Plaintiff's "probable retirement in the near future" and
the former of which was reflected in the pattern of conduct
by Defendant Donnelly toward the very, very few African
American supervisors in the Chemistry Department of which
the Plaintiff one of two.

68.  With the re-assignment as described, the Plaintiff
was, by title and function, and responsibility, demoted
because, on the 8:00 A.M. to 4:00 P.M. shift, with weekend
rotations, the Plaintiff would be assigned to regular bench
work.  Thus, the Plaintiff would be working out of title
and under the supervision of technical staff person, Mr.
Bijan Davoudi, and a senior technician, Ms. Alpha Patel,
each of whom possessed less qualification than did the
Plaintiff.

69.  When Doctor Donnelly informed the Plaintiff of his
demotion and re-assignment, Defendant Donnelly knew that,
to re-assign the Plaintiff to the 8:00 A.M. to 4:00 P.M.
shift, the Plaintiff would be unable to attend to a
position which the Plaintiff held, during those hours, at
Harlem Hospital per an affiliation agreement between
Columbia University and the Health and Hospitals
Corporation and Harlem Hospital, a position which the
Plaintiff had held, with the knowledge of the New York City
Health and Hospitals Corporation and the Bellevue Hospital
Medical Centre and Defendant Donnelly for many years.

70. In fact, Defendant Donnelly, himself, worked
another position at another of the New York City Health and

Hospitals Corporation facility, Lincoln Hospital in the
Bronx, as part of Northern Manhattan Network which includes
the New York City Health and Hospitals Corporation Harlem
Hospital, Lincoln Hospital, and Metropolitan Hospital
facilities for which the Bellevue Hospital toxicology
laboratory operation is the reference lab.

71. A meeting was held thereafter on or about May 23,
2006, at which Defendant Donnelly was present along with
Robert Barclay, Associate Director of the New York City
Health and Hospitals Corporation Bellevue Hospital Medical
Centre Department of Pathology who had been present at the
May 12, 2006 meeting, and Scott Fuller, the Assistant
Director of the Bellevue Hospital Medical Centre Department
of Pathology, and Mr. George Lawrence, the Plaintiff's
grievance representative from Local 375 of the Civil
Service Technical Guild, of which the Plaintiff was a
member.

72.  The meeting was held at the request of the
Plaintiff for the purposes of having Defendant Donnelly
reconsider his decision which the Plaintiff believed was
unjust, unfair and propelled by the impermissible
considerations of the Plaintiff's race and age and
otherwise denied the Plaintiff due process, and otherwise
violated the provisions of the Civil Service Laws of the
State of New York which were designed to protect the
Plaintiff, because of his demonstrated competence and
seniority, in the arbitrary modification and abrogation of
the Plaintiff's longstanding terms and conditions of
employment.

73.  Prior to the Plaintiff's re-assignment, demotion
and constructive termination, Defendant Donnelly, who is
white, engaged in similar conduct toward the Plaintiff's
former supervisor, Ms. Yvette Vernon, an African American
woman.

74.  Ms. Vernon was the general manager of the New York
City Health and Hospitals Corporation Bellevue Hospital
Medical Center Department of Chemistry and had functioned
in that role for ten years before she was subjected to the
same kind of conduct forcing her, as the only other African
American supervisor in the Department of Chemistry aside
from the Plaintiff to resign.

75.  Ms. Vernon had been functioning in her senior supervisory capacity in the Chemistry Department for approximately ten years when Defendant Donnelly became the Director of the Department.

76.  Defendant Donnelly placed Barbara Birmingham, who is a white female and who at the time was the general managing supervisor of the Microbiology Department, over Ms. Vernon. He did so without any forewarning and notwithstanding that Ms. Jordan had been performing her duties and functions, during the prior ten years, in an outstanding and otherwise satisfactory manner and fashion.

77.  Ms. Birmingham had no expertise or experience in the field of chemistry when Ms. Vernon was demoted and subject to supervision by Ms. Birmingham.

78. Because of Ms. Vernon's reassignment and demotion, she felt humiliated and resigned only to be replaced by a younger white individual with less experience and expertise.

79.  When the Plaintiff was re-assigned and demoted and then constructively discharged, he was replaced by a younger white male with less expertise and experience than the Plaintiff possessed.

80.  With the Plaintiff's racially and age discriminatory demotion and with the Plaintiff's racially discriminatory and age discriminatory and involuntary and retaliatory constructive discharge, there were no African American supervisors in the Bellevue Hospital Medical Centre Chemistry Department.

81.  At the time that the Plaintiff was re-assigned, demoted, and constructively discharged, he was the only one of the four general shift supervisors in the Bellevue Hospital Medical Centre Chemistry Department who was African American; he was the most senior in his Department before he was re-assigned and demoted; he was the most productive; and he was, in sum and substance, the most qualified and experienced of the four supervisors.

82. As noted, he was replaced by a much younger, less senior, white individual who had only two to three years of supervisory experience and no experience or expertise in the area of toxicology.

83.  At the May 23, 2006 meeting, Defendant Donnelly backtracked from his position articulated in the May 12, 2006 meeting in which he had stated that the Plaintiff had performed his duties and responsibilities well.

84.  At the May  23, 2006 meeting, Defendant Donnelly made comments which cast doubt on the Plaintiff's competence as a supervisor and a technologist notwithstanding that he never raised such at the May 12, 2003 meeting or otherwise prior to May 23, 2006 and notwithstanding that, throughout his career of twenty three years of which eighteen were as a supervisor, the Plaintiff had performed his duties and functions in nothing less than satisfactory manner and fashion and ordinarily and regularly in an outstanding manner and fashion and had never suffered any adverse employment actions or been given any advisement that his position was in jeopardy because of less than satisfactory job performance or otherwise including any issues or problems with respect to his employment at Columbia University-Harlem Hospital during the day time hours and/or problems with the hours during which he was functioning at Bellevue Hospital.

85.  At the May 23, 2006 meeting, Defendant Donnelly refused to re-consider his decision to re-assign the Plaintiff and demote him, the purpose for which the meeting was held.

86.  Before the Plaintiff was subject to the re-assignment, demotion and constructive discharge, the Plaintiff had never been counseled about any issues or problems related to his job performance; he had received no warnings; and he had not been subjected to any progressive disciplinary actions that could have lead to re-assignment, demotion and discharge.

87.  In other words, the Plaintiff had to be forced out in another manner and fashion in order to get rid of him because his work performance was never an issue and because his work at Harlem Hospital had never been an impediment to his otherwise successful and highly satisfactory performance of his duties at Bellevue.

88.  In order to get rid of the Plaintiff and to replace him with a younger white individual who was less qualified than the Plaintiff, Defendant Donnelly gave the

14

Plaintiff no other choice but to force the Plaintiff to
leave: to constructively discharge the Plaintiff against
the Plaintiff's will and because of race and age factors
that propelled Defendant Donnelly to want to get rid of the
Plaintiff.

89.  On June 1, 2006 the Plaintiff requested a leave of
absence from June 9, 2006 through July 9, 2006, the
temporary period in which, without anything definite
thereafter, the Plaintiff was being re-assigned and
demoted.

90.  The Plaintiff requested such rather than suffering
the age discriminatory and race discriminatory re-
assignment, demotion, and, associated therewith, the
eventual involuntary and retaliatory and racially
discriminatory and age discriminatory constructive
termination from the position, within the New York City
Health and Hospitals Corporation Bellevue Hospital Center
Department of Chemistry, in which he had been employed
regularly for almost twenty three years and in which he had
been a supervisor for approximately eighteen years.

91.  Doctor Donnelly denied such without reason.

92.  On June 6, 2006, the Plaintiff's Union
representative wrote to Brenda Chapman, Director of Labor
Relations at the Bellevue Hospital Medical Centre,
requesting that the Hospital hold the Donnelly actions, to
take effect on June 9, 2006, in abeyance until the Union,
management, and the Plaintiff could meet to resolve the
issue amicably.

93.  On June 8, 2006, the Plaintiff's Union was
informed by Mr. Arthur Simmons, that Defendant Donnelly
refused to postpone the effective date of the re-assignment
and demotion pending further efforts to resolve the
grievance and contest about Defendant Donnelly's conduct
and actions.

94.  On June 9, 2006, the Plaintiff was forced to
separate from his position in the Bellevue Hospital Medical
Centre Department of Chemistry.

95.  The conduct of Defendant Donnelly and his refusal
to reconsider such and the refusal of the New York City
Health and Hospitals Corporation Bellevue Hospital Medical

Centre to redress the actions and conduct of Defendant
Donnelly forced the Plaintiff to leave his employment.

96.  There were other alternatives, if pursued by the
Defendants, which could have if they had wanted such to,
remedied the situation and avoided the re-assignment,
demotion and forced, involuntary separation of the
Plaintiff from his position.  Those alternatives, however,
were expressly rejected by the Defendants leaving the
Plaintiff no other alternative but to separate from his
position at the New York City Health and Hospitals
Corporation Bellevue Hospital facility.

97.  On June 23, 2006, the Office of the Bellevue
Hospital Medical Centre Office of Labor Relations informed
the Plaintiff's Guild representative that  it was declining
to schedule a hearing related to the Plaintiff's grievance
citing to the fact that, although because of the
circumstance in which the Defendants had placed the
Plaintiff, the Plaintiff had, albeit involuntarily,
resigned.

98.  The Plaintiff had no desire to resign his position
and would not have resigned his position but for his
untenable re-assignment and demotion, effective June 9,
2006, and the refusal of the Defendants to reconsider the
re-assignment and demotion and otherwise address whatever
legitimate issues and problems, if any, propelled the re-
assignment and demotion.

99.  The Plaintiff would have continued working at his
position in the Bellevue Hospital Medical Centre for years
yet to come since there was no legitimate reason not to do
so save for the fact that he was involuntarily coerced and
compelled to leave his position at the New York City Health
and Hospitals Corporation Bellevue Hospital Medical Centre.

100.  The reason for the refusal to do so were the same
as the reasons for the initial re-assignment and demotion:
improper and illegitimate racial and age discriminatory
factors which drove the Defendants to do what they were
doing and, in association therewith, to replace the
satisfactorily performing Plaintiff with a younger, white
male with less experience and expertise than was possessed
by the Plaintiff.

101.    Throughout this course of conduct, it is believed that Defendant Donnelly was acting in concert with Defendant Boorstein to whom Defendant Donnelly reported.

102.    Defendant Boorstein was aware of the course of conduct being pursued by Defendant Donnelly and/or should have been aware of such.

103.    The Plaintiff brought this course of conduct to the attention of Defendant Boorstein including bringing to his attention all of Plaintiff's efforts to resolve the issues raised by the course of conduct and to obtain relief from what the Plaintiff believed was the unlawful race and age discriminatory reassignment and demotion conduct being taken against him and the retaliatory and race and age discriminatory involuntary termination to which the Plaintiff was being subjected.

104.    Although Defendant Boorstein was aware of such, nonetheless, he took no actions to remedy the conduct but rather endorsed and sanctioned the race and age discriminatory conduct and the retaliatory conduct practiced against the Plaintiff.

105. Furthermore, the Plaintiff sought relief through the New York City Health and Hospitals Corporation Bellevue Hospital Medical Centre facility Human Resources and Labor Relations processes in order to address his issues and the racially and age discriminatory and retaliatory conduct which he alleged propelled his reassignment, demotion, and eventual involuntary and racially discriminatory and age discriminatory and retaliatory discharge from his position at the facility.

106. However, the Plaintiff received no relief from the New York City Health and Hospitals Corporation and the New York City Health and Hospitals Corporation Bellevue Medical Centre facility.

107. Rather the New York City Health and Hospitals Corporation and the New York City Health and Hospitals Corporation Bellevue Hospital Medical Centre sanctioned and ratified the race and age discriminatory conduct practiced and taken against the Plaintiff and offered no relief to him from such.

108.   It is believed that the New York City Health and
Hospitals Corporation and the New York City Health and
Hospitals Corporation Bellevue Hospital Medical Centre have
failed to effectively train its employees in addressing
issues related to race and age discrimination such that
conduct as described herein is tolerated and sanctioned and
permitted to occur and go without remedy when brought to
the attention of those in charge of addressing allegations
of race and age discrimination in the terms and conditions
of those in its employment.

109.   The Plaintiff suffered injuries and damages
including a loss of benefits and pay of substantial nature
the result of which has adversely impacted the Plaintiff
and his family.

110.   The Plaintiff suffered anxiety and humiliation,
embarrassment, and stress, and emotional trauma,
psychological anguish, all of which are continuing to this
day.

111.   The Plaintiff's rights, as guaranteed under the
Fourteenth Amendment to the United States Constitution and
the Civil Rights Act of 1871, 42 U.S.C. Section 1983, were
violated by the actions and conduct of the Defendant
parties and, as well, under Title VII of the Civil Rights
Act of 1964, as amended, 42 U.S.C. Section 2000 et seq.,
and, as well, under the Age Discrimination in Employment
Act, 29 U.S.C. Section 621, et seq.

112.   The Plaintiff's rights, as guaranteed under the
laws and Constitution of the State and City of New York,
including but not limited to the Human Rights Law of the
City of New York and the Human Rights Law of the State of
New York, were violated by the actions and conduct of the
Defendant parties.

113.   The Plaintiff has no other timely and adequate
remedy at law but for the commencement of this litigation.

V.   CAUSES OF ACTION

A.   FIRST CAUSE OF ACTION

114.   The Plaintiff reiterates Paragraph #'s 1 through
113 and incorporates such by reference herein.

115.   The actions and conduct and policies of the
Defendant parties, individually and collectively, in re-
assigning and demoting the Plaintiff violated the
Plaintiff's were racially discriminatory and age
discriminatory and violated the Plaintiff's rights under as
guaranteed under the Fourteenth Amendment to the United
States Constitution and the Civil Rights Act of 1871, 42
U.S.C. Sections 1983, Title VII of the Civil Rights Act of
1964 as amended 2000 et seq., and the Age Discrimination in
Employment Act of 1967, as amended, 27 U.S.C. Section 621,
et seq.

116.   The Plaintiff suffered injuries and damages.

B.   SECOND CAUSE OF ACTION

117.   The Plaintiff reiterates Paragraph #'s 1 through
116 and incorporates such by reference herein.

118.   The actions and conduct and policies herein
resulted in the Plaintiff's involuntary, constructive and
racially and age discriminatory and retaliatory termination
in violation of the Plaintiff's rights as guaranteed under
the Fourteenth Amendment to the United States Constitution,
the Civil Rights Act of 1871, 42 U.S.C. Section 1983, Title
VII of the Civil Rights Act of 1964 as amended, 42 U.S.C.
Section 2000 et seq., and the Age Discrimination in
Employment Act of 1967 as amended, 27 U.S.C. Section 621,
et seq.

119.   The Plaintiff suffered injuries and damages.

C.   THIRD CAUSE OF ACTION

120.   The Plaintiff reiterates Paragraph #'s 1 through
119 and incorporates such by reference herein.

121.   The actions and conduct and policies, which caused
the Plaintiff to be reassigned and demoted, were racially
and age discriminatory and violated rights guaranteed to
the Plaintiff under the Human Rights Laws of both the State
of New York and of the City of New York.

122.   The Plaintiff suffered injuries and damages.

### D.   FOURTH CAUSE OF ACTION

123.   The Plaintiff reiterates Paragraph #'s 1 through 122 and incorporates such by reference herein.

124.   The actions and conduct and polices, caused the Plaintiff to be involuntarily and constructively and race and age discriminatorily and retaliatorily terminated from his position, violated the Plaintiff's rights under the Human Rights Laws of both the State of New York and of the City of New York.

125.   The Plaintiff suffered injuries and damages.

### E.   FIFTH CAUSE OF ACTION

126.   The Plaintiff reiterates Paragraph #'s 1 through 125 and incorporates such by reference herein.

127.   The Plaintiff was denied due process of law before being reassigned, demoted, and separated from his position in violation of his rights as guaranteed under the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

128.   The Plaintiff suffered injuries and damages.

### F. SIXTH CAUSE OF ACTION

129.   The Plaintiff reiterates Paragraph #'s 1 through 128 and incorporates such by reference herein.

130.   The Plaintiff was reassigned, demoted and separated in violation of his rights as guaranteed to him under the Civil Service Law of the State of New York.

131.   The Plaintiff suffered injuries and damages.

WHEREFORE and in light of the foregoing, it is requested that the Court assume jurisdiction herein and thereafter:

[a] Invoke pendent claim jurisdiction.

[b] Award the Plaintiff both compensatory and punitive damages.

[c] Award the Plaintiff such other and further relief including appropriate injunctive relief.

[d] Empanel a jury.

[e] Award attorney's fee and costs.

[f] Award such other and further relief as the Court deems appropriate and just.

DATED: New York, New York
       June 5, 2007

Respectfully submitted,

/s/James I. Meyerson_____
JAMES I. MEYERSON [JM 4304]
396 Broadway @ Suite # 601
New York, New York 10013
[212] 226-3310
[212] 219-9412
ATTORNEY FOR PLAINTIFF
BY:_____